UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) |
|     *vs.* | )    1:16-cr-232-JMS-DML |
| | ) |
| MICHAEL STIVERS, | ) |
| | ) |
|     *Defendant.* | ) |

**ORDER**

Defendant Michael Stivers pleaded guilty to eleven counts of receiving and distributing child pornography and one count of possessing child pornography. [Filing No. 146.] Prior to sentencing, the Government requested restitution in the amount of $3,000 on behalf of the minor victim depicted in the "Vicky"[1] pornography series.[2] At the sentencing hearing, Mr. Stivers objected to the restitution request and the Court ordered the parties to brief the issue. [*See* Filing No. 145 at 5.] Mr. Stivers' Objection to Payment of Restitution, [Filing No. 148], is now ripe for the Court's decision.

**I.**
**LEGAL STANDARD**

The mandatory restitution provision in 18 U.S.C. § 2259 requires the Court to order a defendant convicted of child pornography offenses to pay restitution in the "full amount of the victim's losses." 18 U.S.C. § 2259(a), (b)(1); *Paroline v. United States*, 572 U.S. 434, 443 (2014).

---

[1] "Vicky" is a pseudonym for the actual minor victim depicted in the series, which the Court will adopt to refer to the victim in this Order. All of the references to "Vicky" in this Order and in the other criminal cases discussed herein refer to the same person.

[2] The Government initially sought an additional $3,000 in restitution for the minor victim depicted in the "Tara" series, but that request has been withdrawn. [*See* Filing No. 176 at 1 n.2.]

1

Restitution is generally limited to the losses proximately caused by the defendant's commission of the offense, but in the case of victims of child pornography offenses—whose total losses are the result of repeated and continued victimization by numerous offenders as images and videos are widely shared on the Internet—"a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Paroline*, 572 U.S. at 458. "At a general level of abstraction, a court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses." *Id*. at 459. The amount of restitution assessed to each defendant should be neither "severe" nor "a token or nominal amount," and should be "a reasonable and circumscribed award imposed in recognition of the indisputable role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role." *Id*. at 458-59. "This cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment." *Id*. at 459.

## II.
### DISCUSSION

In his Objection, Mr. Stivers argues that, based on the decision in *United States v. Erickson*, 388 F. Supp. 3d 1086 (D. Minn. 2019), "there is reason to believe that the appropriate amount of restitution has been paid in full." [Filing No. 148 at 1.] Mr. Stivers "believes that [the *Erickson*] analysis should apply in this case." [Filing No. 148 at 1.]

In response, the Government asserts that the total amount of restitution owed to Vicky, excluding attorneys' fees, is $6,006,845.16, which includes $4,751,515 in medical expenses related to the exacerbation of underlying medical conditions, $164,475 in expenses for psychotherapy, $53,330 in vocational and educational expenses, $936,646 in lost wages, and $100,879.16 in documentation costs, and to date she has only received $1,892,935.45. [Filing No. 176 at 3.]

Because the only portion of Vicky's restitution that was specifically at issue in *Erickson* was the costs related to exacerbated medical conditions, the Government assumes that Mr. Stivers only intends to challenge the calculation of those costs. [Filing No. 176 at 3-4.] To prove those costs, the Government relies primarily upon two declarations from Dr. Sharon Cooper, [Filing No. 134-3; Filing No. 176-1], and argues that the declarations adequately explain and justify the claimed $4,751,515 in expenses, [Filing No. 176 at 5-7].

In reply, Mr. Stivers clarifies that he is objecting to all of the restitution costs based on Dr. Cooper's declaration because, as the court found in *Erickson*, her estimates are not sufficiently explained or documented. [Filing No. 177 at 1-2.] Mr. Stivers argues that the unreliability of Dr. Cooper's estimates is further evidenced by the fact that the claimed expenses for exacerbated medical conditions have increased by approximately $1.5 million in the year since *Erickson* was decided. [Filing No. 177 at 1-2.] In addition, Mr. Stivers asserts that this Court cannot rely upon Judge Sarah Evans Barker's order in *United States v. Paul E. Jones*, No.1:14-cr-00080-SEB-DML, Dkt. No. 55 (S. D. Ind. April 2, 2020), because: (1) the *Jones* court "just accepted that the total amount due was the $4,521,423.16 amount that the *Erickson* Court rejected"; and (2) the *Jones* court relied on a representation that Vicky has already received $2,016,309.63 in restitution, which is greater than the $1,892,935.45 that the Government is now claiming she has received. [Filing No. 177 at 2.] Lastly, Mr. Stivers asserts: "Restitution cannot continue to be a moving target that grows every year based on speculative projections and subjective diagnoses. There needs to be an amount that is set, certain, and identifiable." [Filing No. 177 at 2.]

Mr. Stivers' final argument can be rejected out of hand. Not only does it ignore the reality facing victims of child pornography offenses, but both the United States Supreme Court and the medical expert consulted in this case have acknowledged the ongoing and evolving nature of the

harm caused to such victims. *See Paroline*, 572 U.S. at 457 ("It is common ground that the victim suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured. . . . The unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse . . . plays a part in sustaining and aggravating this tragedy."); [Filing No. 134-3 at 1 (Dr. Cooper explaining the ongoing nature of harm caused by child pornography offenses and stating that "as years go by, the impact grows rather than diminishes")]. Vicky's suffering is not static; it may get better or it may get worse. The Court is not concerned with setting a finite limit on Vicky's restitution, as the only issue in this case is what constitutes an appropriate amount to be paid by Mr. Stivers.

Mr. Stivers primarily relies upon the *Erickson* decision, in which a district court in Minnesota considered whether $2,000 was an appropriate restitution amount for the defendant to pay to Vicky. 388 F. Supp. 3d at 1093-95. In that case, Vicky estimated that her total losses were approximately $4,822,405.13, including $3,266,093 for "disaggregated 'increased medical costs.'" *Id*. at 1093-94. The seven-page expert report that Vicky submitted to that court estimated increased medical expenses for each of her numerous medical conditions. *Id*. at 1094. As to the reliability of the estimates, the court stated:

> The Court does not doubt that stress can worsen pre-existing medical conditions, but the Court does not believe that Vicky's expert has sufficiently explained how the stress that Vicky will experience as a result of the ongoing trafficking of her images will cause each of these medical conditions to worsen over time. For example, the evidence in the record does not allow the Court to find that the trafficking of Vicky's images will somehow increase the amount of treatment that she will need to receive for her degenerative spine.
>
> Perhaps more importantly, the Court does not believe that Vicky's expert has adequately explained or supported the particular amounts that she has estimated. For example, the Court does not doubt that stress from the trafficking of Vicky's images could increase her need to seek treatment for migraine

4

> headaches, but the Court has no idea why the expert estimates that Vicky will spend an additional $7,000 per year for those treatments over the next 60 years–as opposed to, say, an additional $3,500 per year over the next 10 years, or an additional $14,000 per year over the next 30 years.  Similarly, the Court does not doubt that stress from the trafficking of Vicky's images could increase her need to get medical help for insomnia, but the notion that Vicky will need to spend almost a million dollars getting sleep-management help over the next 60 years is difficult to accept, especially as the expert does not explain how she arrived at that rather startling estimate.  In short, the expert's estimates of increased medical costs are unduly speculative and insufficiently explained and documented.

*Id*.  Accordingly, the *Erickson* court subtracted the estimated $3,266,093 in increased medical costs from the estimated $4,822,405.13 in total losses and found that the remaining $1,556,312.13 was a reliable estimate of Vicky's total losses.  *Id*. at 1094-95.  Because Vicky represented that she had already received $1,588,094 in restitution payments—more than the total loss amount—the court determined that the defendant should not be ordered to pay any additional restitution to Vicky.  *Id*. at 1095.

As an initial matter, Mr. Stivers asserts that the Government erroneously "[took] a leap of faith" in construing his reliance on *Erickson* as a challenge only to the costs related to exacerbated medical conditions, despite the fact that he only specifically discusses Dr. Cooper's estimates of those particular costs.  [Filing No. 177 at 1-2.]  The Court has reviewed all of the evidence submitted by the parties and—in the absence of specific objections to the costs for psychotherapy, vocational and educational expenses, lost wages, and documentation costs—concludes that the asserted amounts are an accurate estimate of Vicky's actual losses in those categories.

Turning to the costs associated with exacerbated medical conditions, this Court is not bound by the *Erickson* court's assessment of what is reasonable and instead must consider the evidence that has been presented in this case, including Dr. Cooper's declaration, [Filing No. 176-1].  The declaration explains that victims of sexual exploitation experience toxic stress levels that weaken their overall health and worsen existing medical conditions.  The declaration also

5

addresses each of Vicky's health problems and breaks down the expected medical costs for care, medications, and outpatient visits related to each condition.  Although Dr. Cooper's estimates of future costs by nature involve some degree of speculation, the estimates are based on medical knowledge and expertise and meet the appropriate standard for expert opinion testimony under Federal Rule of Evidence 702. This Court therefore disagrees with the *Erickson* court's characterization of such estimates as "unduly speculative"  and finds that the evidence presented is sufficient to support a finding of $4,751,515 in medical expenses for exacerbation of underlying medical conditions.

Accordingly, the Court accepts the total of $6,006,845.16 as an accurate estimate of Vicky's overall losses.  The Government and Vicky's attorney represent that, to date, Vicky has received $1,892,935.45 in restitution payments, [Filing No. 176 at 3; Filing No. 176-2 at 2], and the Court credits the attorney's testimony.  Thus, Mr. Stivers' assertion that Vicky has been fully compensated is incorrect.[3]  Furthermore, Mr. Stivers makes no argument that $3,000 is not a reasonable estimate of the proportion of Vicky's losses that are attributable to his crimes, and based on the totality of the evidence presented, the Court finds that it is a reasonable amount.

---

[3] This result is not dependent upon the prior order in *Jones*, although the same reasoning that was applied in that case applies here.  In *Jones*, the Court denied a defendant's motion to dismiss future restitution payments to Vicky because: (1) the motion was untimely; and (2) the defendant's contention that Vicky had already been fully compensated was incorrect given that the evidence showed that her losses totaled $4,521,423.16, yet she had received only $2,016,309.63 in restitution payments. *See* No.1:14-cr-00080-SEB-DML, Dkt. No. 55 at 2.  Again, the Court is not bound by a previous estimation of Vicky's total losses, given that the harm she suffers continues to evolve over time.  In this case, the total losses exceed the amount of restitution already paid, meaning further restitution can and should be ordered.  Although it is unclear why the estimate of restitution already received was higher in *Jones* than it is here, even if the Court were to adopt the higher number, Vicky's total losses nonetheless exceed the payments received, and further restitution is appropriate.

## III.
### CONCLUSION

Based on the foregoing, the Court **OVERRULES** Mr. Stivers' Objection to Payment of Restitution, [148], and **ORDERS** that he pay $3,000 in restitution to the victim of the "Vicky series." Mr. Stivers shall make all restitution payments to:

> United States District Court for the Southern District of Indiana
> Clerk' Office
> Attn: Financial Section – Restitution
> Birch Bayh Federal Building
> 46 E. Ohio Street
> Indianapolis, IN 46204

With his payment(s) to the District Court, Mr. Stivers shall include his name, social security number, and the District Court's docket number assigned to this case.

The United States Probation Office is **DIRECTED** to amend the Judgment to include the restitution assessed in this Order.

Date: 5/29/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**and to United States Probation**